Good morning, and may it please the Court, I'm Stephanie Adraptis on behalf of Milton Lewis, and I'd like to reserve three minutes of my time. I'll try to help you watch your time, but ultimately you're responsible for your time. Thank you, Your Honor. Please proceed. Under Batson v. Kentucky, racial discrimination in jury selection violates the Equal Protection Clause. However, if any race-neutral excuse tendered by a prosecutor is sufficient to overcome a Batson challenge, then Batson would be unenforceable. As the Supreme Court observed in Miller, L., some proffered race-neutral reasons are false. Therefore, in the third step of the Batson analysis, the Court must determine whether the prosecutor's justifications are pretextual. Although the prosecutor in this case offered race-neutral justifications, the California courts failed to do a step three Batson analysis because it never reached the factual issue of purposeful discrimination. As in Green v. Lamarck, the trial court also did not make findings as to whether the prosecutor's purported justifications for striking juror G in this case were credible. Because the State courts did not reach Batson's third step in this case, review of that issue should be de novo. This case is distinguishable from cases where the State courts did not do a comparative juror analysis, but engaged in a step three analysis of credibility. Here, we don't have either, and so under 2254d2, this Court should, under a de novo standard of review, determine the credibility of the prosecutor's justifications. So I'm trying to figure out what that means, then, exactly. If you say we have to do a de novo review of the comparative juror analysis, is that correct? Well, Your Honor, in this case, there isn't one. And so I think the Court has to do a comparative juror analysis from the beginning. And I offered in my brief comparisons with three, actually, and three of the jurors who sat on the jury, as well as two of the alternates, showing that if one compares the justifications offered by the prosecutor to those jurors, it's clear that they weren't the real reasons for striking Juror G, because those same justifications applied with greater force to jurors who were allowed to serve. A good example is the justification he gave that Juror G was not forthcoming about her brother's criminal charges because she said she didn't know what it was. If you look at the responses of Juror 122 126669, who did sit on the jury when asked about his third brother's criminal charges, all of them apparently had been prosecuted, he said, I don't really know what those are. So the prosecutor never asked about that, and he didn't use it as an excuse to strike him from the jury or the jury. And I have two questions for you, then, regarding that. Those other individuals, it seems like they had siblings or people they knew who had past conduct that had been in, that their relative had been involved in the, had been convicted previously or had been involved. This juror had a brother who was currently on probation for a felony and not doing well. Your Honor, it wasn't clear to me from reading the record that he was currently on probation. She said her brother had been on probation, I thought, and that he had not met with his probation officer a couple of times. And if you look at the other juror, the female juror highlighted in my brief as well, one of the other comparison jurors, her son was currently involved with the criminal justice system, and she said he had been all his life. And he had a much worse record from her description than Juror G. Her son, she said, had been prosecuted over and over again. And she also couldn't name some of the crimes. She said, I'm sure some of them are felonies. When asked, you know, whether she'd had contact with him recently, she said, last night. So, again, much more cause for concern as to a juror who was actually allowed to serve but was not a minority, that the female juror, the mother of the son who had been involved with the criminal justice system all his life. She had a lot more involvement also with the relative who was troubled. And so there was much more reason to be concerned about her. Sotomayor, do we do a de novo review of the pretext, the question on pretext? Yes, Your Honor. The step three decision-making process, which just wasn't done here, and this Court must do de novo. And if one looks at those. How do we do that? By comparing the prosecutor's justifications for striking juror G against the information that we have about jurors who were allowed to serve or against whom there were no peremptory or challenges for cause by the prosecutor. And Miller L. makes that very clear, that that's the process the Court has to engage in. And what I attempted to do was she You're saying the trial judge failed to do something here? She did not engage in the step three analysis. She said that the prosecutor had offered race neutral justifications, which he did. But that's step two of a Batson analysis. What's step three that you say that the judge didn't engage in? The third step was to both do a comparative analysis, whether those same justifications applied to people who were allowed to serve and also to make a credibility determination. Whether or not those were the actual real credible reasons for striking the minority juror. The judge specifically didn't do that here. She started to use the word accepted as to his justifications and then corrected himself and said, well, I've heard them and they're race neutral. And actually, the California Court of Appeal did the same thing. Its analysis stopped far short from determining whether or not these were the real reasons or credible reasons. They just articulated the step two standard that they have to be race neutral. And that's why I'm wondering if the Court of Appeals did enough in their ruling. And I'm looking at excerpt of record, appellant's excerpt of record at 56. And it talks about the prosecutor noted a variety of things and how the defense counsel replied. And then it says, on the foregoing record, even assuming that a prima facie case of discrimination had been established, the prosecution met the burden of showing that the challenge was not predicated on group bias. Well, Your Honor, the Court of Appeal didn't engage in a credibility analysis. How do you know that? I mean, it's implicit in what the court said. Well, because they- We assume the court didn't know what it was supposed to do? They – well, the Court of Appeal at the time in California wasn't supposed to do a comparative juror analysis, and so they didn't. And if they had, they would have had to find that these justifications weren't credible because they applied with equal and greater force. Let's assume you're right. So what do we have to do, in your view? I think this Court – the Green v. Lamarck case talks about that. They said this Court shouldn't remand the case to the State court to do that credibility analysis in the first instance, that this Court should do that analysis. So you think we should do that? I believe the court should do- And who bears the burden of persuasion? I believe that the defendant in the first and third step. Right. Okay. And so tell us why you think that your client must win if we engage in that analysis. Your Honor, because the justifications the prosecutor gave in this case were pretextual because they applied with equal or greater force to people who were allowed to serve. If he really was concerned about people who had relatives in the criminal justice system, he would have stricken the two seated jurors who had relatives with much more serious records. He also made comments that this juror had a hidden agenda. There was no basis for that in the record, nothing to suggest that she did. How about that she was bored? The notion that she was bored was disputed by defense counsel. And if you look at the record of proceedings, he was correct. He said this juror was attentive and she answered the questions appropriately. And- But that's what I'm not so sure. I mean, he sort of conflated. I mean, she answered the questions that were asked, but I didn't see, and maybe you can find it in the record, where he disputed, defense counsel disputed that she was bored during the time that she wasn't answering the questions. Well, Your Honor, he referred to her as being attentive. And when one takes those kind of vague demeanor-based accusations, it's impossible on a cold record, on a paper record, to say if she was bored or not bored. The prosecutor never asked her if she was bored. If that was so important to him, you would think he would have said to the juror during his questioning, are you bored, do you want to be here? But don't you look, one of the problems, I think you've highlighted it, is that we aren't there, and the trial judge was there. And you can say something in any number of ways, or you can sit in any number of ways. You can give body language inferences in any number of ways. But you're right, I mean, none of that shows up on the record. And that's why I think, maybe I'm wrong here, but I think the trial court has to be given some deference, because they are actually sitting there watching the person. So if someone may never answer a single question inappropriately, but if they're sitting there shaking their head, or making faces, or acting in a diffident way, and the prosecutor sees that, aren't they entitled to say, hey, they really haven't said anything that would set them apart, but their body language is such. And that's what this, one of the things that this prosecutor seemed to be particularly bothered by. But we can't see that. It's correct, Your Honor, we can't see it. If the trial court had said, I noticed that, too, she was, you know, crossing her arms, or she would, but the trial judge never endorsed those observations. She never indicated, yes, I saw that as well. So there really isn't any basis. And if that- Well, but she made a blanket statement that the reasons that he gave were legitimate and reasonable. I think I don't remember the exact terminology, but she did make a statement that the reasons that the prosecutor gave were legitimate and reasonable. So how do we know that wasn't included in that? Well, Your Honor, I believe she was endorsing their race neutrality. And in Green v. Lamartha's court, did it state that on review, on habeas review, the court shouldn't assume that the trial judge found that those were the real, credible, actual reasons because she denied the Batson challenger, because she found they were race-neutral reasons, because that is a separate analysis. And I would also say that if- But when you make a statement like that, are you saying that the trial court should have then said, well, I didn't see the following? I mean, I'm just not sure how much we put on the trial court when they say these were legitimate reasons. I understand that the trial court, at your argument, may not have made a genuineness finding with respect to him. But it seems like she acknowledged the reasons that they were legitimate and reasonable, I think was the terminology, I don't know, for everything that he said, and then highlighted, like, two or three of them. And so I'm just not sure if we're supposed to discount, you know, the others. You're saying that we probably should. Well, Your Honor, as far as the demeanor-based rationales are concerned, I think the court should not give them much weight because the trial judge didn't observe the same thing. Well, how do we know she didn't observe it? She said he gave legitimate reasons. How do we not infer that? Well, my reading of her ruling was that she was endorsing their race neutrality and didn't go further to say, yes, that's actually why he struck her. And he did give quite a laundry list of rationales, which I think in and of itself is suspect. He said that I decided to excuse her based on a gut feeling more than anything else, and I knew I'd probably get a Batson challenge, so I made a big list. And like I pointed out in the brief, there have been exposed training materials for prosecutors. This is how you can get around a Batson challenge. You make this list, watch that juror closely, and you'll be able to come up with enough reasons to get around the challenge. And he arguably engaged in that process here. It may have been a result of training, maybe not, but it is suspect that he focused on her so closely. I think I see I've asked questions beyond your time.  Thank you, Your Honor. May it please the Court, Alicia Carlisle, on behalf of Respondent. In this case, the State court reasonably concluded that there was no Batson violation and that the prosecutor's reasons for striking juror S.G. were credible and race neutral. This Court should affirm. A few points. First of all, we dispute that the trial court did not engage in a third-step analysis. In fact, the trial court made lengthy findings regarding the prosecutor's reasons. I would point the Court to excerpts of records, page 260 to 262. Sotomayor, show me exactly where she made the third-step finding. She said she – it's a long ruling, so I'll summarize it. She said, but tell me – tell me what page, 260, starting at page 260? And what? 17? A little bit. That's where it starts. And then she says, starting at line 27, she says that there was an obvious reason for striking her going on to page 261. It was an obvious red flag for her because it's not uncommon for a prosecutor to use a preemptory on somebody whose brother is on probation, and it's quite, in my experience, somebody, a prospective juror who presently has a family member involved in on probation and doing – not doing satisfactorily would not surprise me for a reason for excusing somebody on a preemptory challenge. It goes on to make other findings. Then at the end of page 261, going into page 262, lines 26, going on to the next page, she says that there were no specific reasons, neutral reasons, for the preemptory challenge, so the motion will be denied. Well, but is that not step two? No. She's saying that she agrees with the reasons. I mean, she doesn't have to recite any magic words. I think when you read the whole three pages of her reasoning, she's explaining why she finds those rulings – she finds those reasons to be credible. It was obvious to her. It jumped off the page as soon as that juror began to spoke. There were other reasons given by the prosecutor. So the fact that, you know – Well, but step two is to have the reasons, state the reasons. Sure. And I think she gives three pages of why she believes those reasons in Excerpt of Records 260-261. We're not actually saying it. You say it's implicit in what she was – she said, that she's accepting them as credible. Right. So she gives three – you know, 260-262, why she believes that the prosecutor's strike is credible. It was an obvious red flag to her that she has a brother who's on probation that's not doing well. There – she doesn't dispute the prosecutor's demeanor-based expectations – or the demeanor-based explanations. However, I would just make one correction to what opposing counsel said about defense counsel disputing the demeanor-based rationales. The defense counsel disputed the prosecutor's second demeanor-based rationale, which was that she seemed aloof from the other jurors because she sat in a different area during the break. And what the defense counsel said was, well, the reason for that is because there might be – there's some ongoing construction at the courtroom and maybe she just found it more convenient to sit further away from there. So he did come up with a plausible reason why she sat away, but he didn't dispute these demeanor-based expectations that she sat there with her arms crossed, that she looked aloof, she looked bored. Roberts, what did the court of appeal have to say about the demeanor aspect of this case? The court of appeal found that the district court credited the prosecutor's and found that that was a reasonable basis for the strike, in addition to the probation – brother who's on probation and not doing well. But what about a comparative juror analysis here? I'm glad you brought that up. There's just no similarly situated juror. First of all – What about the woman who had the son who was on probation? Well, a few things about that. Page, I think it's excerpts of records 411 to 412. She states that the son's case was concluded, it was no longer ongoing, and he had not been put on probation for that offense. So this is the only juror who has a close relative with an ongoing case with the criminal justice system of that county, or it might have actually been a neighboring county, but an ongoing case where he's on felony probation, where he's having trouble with the probation. Everybody else's family members who had convictions were either decades old, ranging from 30 to 40 years in the past, to problems of now adult men when they had them 829, whose son had had more recent problems, but those were concluded, and he was no longer on probation. So this is the only juror that has a family member with ongoing, serious problems who is not doing well. Do we know what they were? I believe she said it was a felony charge. Oh, but we don't know. I don't remember. It had something to do with fleeing an officer. She said it had something to do with either fleeing or resisting an officer. It was a felony charge. The case is concluded. Somehow he avoided being put on probation. I believe that that's at Excerpts of Record, page 411 and 412. So under the way this played out, the prosecutor said he was indignant, apparently. And then said, but I should have been, I knew I would have expected this, and so I had a list from the outset. And early on, I knew I was going to strike her, and so I have my list ready. That doesn't read well. Right. I actually disagree with that characterization of the quote. So this is taking place in Humboldt County, which in the 2010 census had less than 1 percent of an African-American population. What the prosecutor said was, it's a gut reaction more than anything else, but I felt that S.G. would not be a fair and impartial juror in this case. I felt that she had a slightly hidden agenda, and she might not get along well with fellow jurors. A few pages later or a few lines later, he says, I wrote down a whole bunch of things because early on in the process, I had decided to excuse her, and I expected that if I did, I would have to respond to a Wheeler motion. The prosecutor wasn't indignant. In fact, I read the record as a prosecutor who is very aware of his ethical duties and trying to follow the letter and the spirit of the law. And those two sites are at Excerpts of Record 258 and 259. And how do we know his hunch wasn't based on a racial stereotype? Because he had extensive reasons. In fact, there was one that the judge, as soon as they came up on the Wheeler motion, the judge said, oh, because this was the juror who has the brother that's on, you know, that's having trouble with probation. It was obvious to the judge why you would strike that person. The judge even said if this juror hadn't been black, we would have thought twice about this reason. That's correct. The judge did say that. This is part of the problem with Wheeler. I mean, I tried lots of cases under Wheeler, which is an old case in the State court system. And after Wheeler, all prosecutors immediately started thinking this way because they knew they were going to be hauled on the carpet. Your Honor has a lot of experience trying Wheeler cases. I have not handled a Wheeler directly in trial court. I also think that, you know, there's no reason to posit the worst possible motives for this prosecutor. There or any prosecutor, for that matter, there were legitimate, obvious reasons that jumped off the page to this judge, in addition to demeanor-based findings which were not contradicted by either the court nor the opposing counsel about her being sort of standoffish, unhappy to be there. This idea that he should the prosecutor should have spent his limited void year time saying, like, oh, are you having a nice day or are you unhappy to be here. I mean, if she wasn't happy to be or if she was happy to be there at the beginning of that question, she's not going to be at the time. He asks her a bunch of questions about why she looks grumpy. So our position is, is that the trial court did make extensive credibility findings about the reasons the prosecutor offered to excuse this juror. They were supported by the record, and they're entitled to deference. As this Court and the U.S. Supreme Court has noted, the trial court is uniquely well positioned to evaluate both the demeanor of the prosecutor and the demeanor of the jurors. And those, even on direct appeal, should only be overturned when they're clearly erroneous. And when in the habeas conduct, as we are here, they're in fact titled to double deference, and only subject to be overturned if the State court unreasonably found that those – if the court of appeal unreasonably found that the trial court's determinations were supported by substantial evidence. Roberts, the burden of persuasion remains at all times on the defendant. That's absolutely correct. Moreover, comparative analysis, which was not conducted in the State court because it was not required under California law at the time. It doesn't alter that conclusion. There is no juror who is similarly situated to this juror. There's no juror that had any demeanor-based reasons for a strike. Moreover, there's no juror who had ongoing problems with a close family member for a felony charge where there was an ongoing probation violation or ongoing involvement with the district attorney's office that was prosecuting this case. Finally, so because comparative analysis does not alter the conclusion here that the State court's – that the State court's findings were reasonable, this Court should affirm applying the double deference standard under AEDPA, unless the Court has any questions.  Roberts, thank you. Smith. Looking to excerpts of Record 260 to 261, the judge's – the trial judge's ruling, the Respondent characterizes the judge as saying it's a big red flag, that – that language does not appear in this text. The judge never said that it was a big red flag. She said it's not uncommon for a prosecutor to excuse somebody who has a relative that's on probation. However, she did not at that point have before her the information about the juror who was seated, because that happened later. That's at excerpts of Record 411. The seated juror whose son had been prosecuted, she said within the past year, she had seen him last night. He'd had ongoing problems and felony prosecution.  So you heard the other side's attempt to differentiate everybody else from this juror. Do you have a specific response to that? Yes, Your Honor. In the Miller L. case, the United States Supreme Court directly addressed that. The Court said jurors are not the product of cookie cutters, and so you only look in the comparative analysis to the rationale the prosecutor gave for the strike and see whether it applied with equal weight against other jurors. They don't have to be completely similar in all ways. And that's the – So you're conceding there was – there was dissimilarity between these two? Well, there had to be, because they're different people. But on the issue of what Respondent has characterized as a big red flag, the juror who was allowed to serve on the jury as a nonminority was much worse. And the prosecutor never asked any questions about that and didn't strike her. So it's much worse. But it was – apparently, do you dispute that the probation proceedings or his supervision had concluded? Did she not say that? It wasn't clear to me that she knew whether he was on or off probation. She knew that he had not met with his probation officer a number of times, but that was the only information it seems she had, whereas the juror who was seated and served knew that her son had ongoing problems. She referred to being called to bail him out. She said he'd been falsely accused at one point. So there's a much, much worse jurisdiction. I thought that the juror who ended up sitting had stated definitively that the probation had concluded. Your Honor, I didn't see that. It said excerpt of record 411. As counsel said, that's where that juror's questioning is. And my impression from that was it was ongoing. Well, impressions and I-don't-remembers aren't very helpful. Do you have 411 in front of you? I don't have 411 in front of me. I have my notes. But it doesn't indicate that he was still – was off probation. The juror was questioned about her son for some time, and it was apparent he'd had the juror who was excused who had the brother with one probation incident that was discussed. The text of 260 to 261 simply doesn't endorse credibility of the prosecutor or not. I mean, the Court is saying, having heard the explanations, I find that they certainly do state specific and neutral reasons. The Court doesn't say, I believe that this is the real reason. And that's the important difference here. Thank you very much. Thank you, Your Honor. Thank you for your argument. It was very helpful. That case is now submitted. We're ready to proceed to the next case, which is United States of America v. Kendra Davidson.
judges: Ezra, Trott, Murguia